Johnson. The 4th District Appellate Court of the State of Illinois has now convened. The Honorable John W. Turner presiding. Thank you. We are here on case number 421-0662. People of the State of Illinois v. Johnson. Would counsel for the appellant please state your name for the record? Good afternoon. I'm Darrell Omen, the attorney for the appellant Desean Johnson. Thank you Mr. Omen. And counsel for the appellate, please identify yourself for the record as well. Good afternoon. My name is James Williams for the state. Thank you Mr. Williams. Mr. Omen, you may proceed with your argument. Thank you. Again, good afternoon, your honors. You may please the court. I'm Darrell Omen and I represent Appellant Desean Johnson. I raised four arguments in my briefs, but today I would like to focus on the second and the third arguments that I raised. I recently clarified my first argument concerning the speedy trial issue in a motion to cite additional authority, that being the Illinois Supreme Court's recent decision in Cross, which required some recalculation of the applicable dates pertaining to the first claim. And I think I set forth that claim in pretty good detail in that motion, which was granted without objection by this court on December 28th. And to be clear, there is one other speedy trial case still pending in the Supreme Court, that case being People v. Mayfield. So today I'm going to skip ahead to my second argument, which is that the trial judge failed to issue Rule 401A admonishments before accepting a waiver of counsel. And then proceed on to my third argument, which is that the trial court erred in not issuing self-defense instructions in this case where there is at least some evidence in the record that Mr. Johnson acted in self-defense. Turning to the second argument that I briefed, this court should remand for a new trial because the judge failed to issue Rule 401A admonishments, which are mandatory rules, admonishments that must be issued to a defendant before the court accepts a waiver of counsel. The purpose of these admonishments are to ensure that the waiver is knowing and voluntary, which is the constitutional requirement, but the Illinois Supreme Court has also established a rule that must be issued. And it's vital that trial courts issue these rules to ensure that the defendant is fully apprised of his rights and what he's giving up and what he's risking in terms of the charges against him and the sentences that he might face. The state points out in his brief that the defendant was admonished way back in March of 2020, sorry, yes, March of 2020 under Rule 401A, and at that time he decided not to represent himself. So I would suggest that when the admonishments were issued, they did their job in this case. Mr. O, may I ask, is it reasonable for us to look at the different admonishments required in 401A and assess whether there was a meaningful deprivation here? And I want to focus first on the right to counsel. Your client had changes of counsel, had extensive conversations about what counsel would be appointed. Is there any way that we could conclude on this record that he didn't fully understand that he had the right to appointed counsel? Well, I point your honor to this court's recent decision in People v. Martin, which was a 2021 decision, where what your honor is pointing out was even more severe in that case, where the defendant had changed his election to be represented or not be elected, I believe, eight times in that case. And this court concluded just solely based on the lack of proper admonishments, because they are so vital and necessary and required based on the Supreme Court's authority, that it had no choice but to reverse the trial, regardless of the subjective impressions given by the record in this case that he wanted to represent himself. But there wasn't admonishment, it's just the timing. And so the question then turns to, do we really think that he materially did not understand that he had a right to counsel? But again, there's extensive case law on this as well. There are other cases cited in my briefs where admonishments were given substantially previously. And for example, in almost any on the nature of the charges, the possible sentencing range, these things, again, just speaking generally will also come up in discussions about settlement negotiations and what sort of ranges in play. So in a number of cases, and I've cited many of them in my brief, including, let's see, I believe, Bartholomew Langley, the number of cases cited in my briefs, prior admonishments given, at least in part, Your Honor mentioned, if we could separate these out. In fact, we can't, all of them need to be given. It's a simple rule, not three parts, they all have to be given, they have to be given approximately to when the waiver is made. Now, the consequence of the failure to give them is what we're looking at. Right. And because there are also cases that tell us that even defective and even omitted admonishments may not be a basis for reversal, correct? There needs to be substantial compliance. The court does not need to read the rule verbatim into the record. That's correct. However, in this case, where we have a gap of 15 months, and I can't emphasize that enough, when the admonishments were initially given on March 3rd, 2020, the court said, hey, come back in three days and we'll see for sure whether we want to go back on the 6th and said, I did waive, and this case was being brought up on appeal now, I wouldn't have an argument because it had only been three days earlier. But that's not actually the facts of this case. On the 6th, he was admonished again, said, no, I don't want to do it. I'm going to keep my public defender. He says he might go ahead with a trial a month from today. And I can't emphasize enough that throughout the entire course of this case, Mr. Johnson's primary interest, which is very clear from the record, was just getting a speedy trial. He didn't want to represent himself. He just wanted to go to trial and the attorneys, like you said, that's correct, Your Honor. There are multiple attorneys representing him, but his only concern at all times was trying to get to trial as quickly as possible because it was in custody the entire time, pre-trial detainment in this case, and he wanted to stay in court. So what actually happened is he was admonished in March, as the state points out. What they don't point out is the waiver in this case was June 8th, 15 months later, and under the authorities that we just discussed, this court really has no choice, particularly under Martin. I don't think it'd be any clearer because this court in Martin echoed Your Honor's concern and said, quote, we have no doubt after considering the entirety of the record, the defendant knowingly and voluntarily waived his right to counsel. However, we are required to mechanically apply Rule 401 here and reverse their amendment for a new trial. So at the very least, I think based on this record, this court really has no choice but to remand for a new trial. Turning now to my third argument, alternatively, this court could remand for a new trial on the grounds that the trial court failed to issue self-defense instructions in this case where the record contains at least some evidence that he was attacking the defendant himself. The standard for granting a jury instruction when the defense requests one is perhaps the lowest standard in all of criminal law. The Illinois Supreme Court has described it as, quote, some evidence, however slight, in Washington and, quote, very slight evidence in Everett, both cited in my briefs. This is very different than evaluating the sufficiency of the evidence. This is where the court has taken that decision away from a jury. So the standard is very, very high here. And in fact, all interpretations of the record from the judge's perspective, from this court's perspective, is almost stood on its head versus the normal standard to say that they need to be viewed in the light most favorable to the defense and let the jury decide. And in fact, that's my client's Sixth Amendment right to a jury, is to have the jury decide, properly instructed, whether he's guilty or not in light of the law. The evidence presented at the trial in this case was more than sufficient to require the instruction. There was undisputed evidence of a fight among Johnson, Murray, and her friend, Kenesha. It's also undisputed that Kenesha hit Johnson in the head with a heavy candlestick holder. And in fact, the responding officer, when he saw how profusely my client was bleeding from the head, called an EMT to treat him at the scene. By a wide margin, the greatest injuries in this case were suffered by my client. And again, the evidence is not just coming from my client. It does come from my client. He does say there was a fight, there was a tussle, but also the state's sons both testified at trial that they didn't see how the fight started, but they heard the tussling downstairs. They came down and they saw my client essentially immobilized and rendered helpless and bleeding profusely from the head before he basically fought back and tried to defend himself in this case. One of the sons testified that he grabbed a baseball bat and that he gave it to Murray. Mr. Johnson testified that Kenesha had a knife in addition to the thing to take away with respect to this argument is the proper body to evaluate the evidence was the jury, not the trial judge. Counsel, did your client deny having choked or stabbed any of the victims? He testified that he does not remember how those injuries occurred, probably because he had just been hit in the head with one object and rendered unconscious. Well, specifically, what did he deny doing? On cross-examination, he was shown pictures of the injuries suffered by Ms. Murray and also by one of her sons. They had, I believe, small bleeding wounds on their body, and they were asked, well, how did they suffer these injuries if you didn't do it? And he said, in effect, I don't remember what happened. I do know we were tussling, we were wrestling. It was a fight. Quote, it's me and Kenesha locked in. Another quote from his testimony is they were, quote, tussling towards the couch. Those are on pages 1270 and 1302 of the reported proceedings. He repeatedly calls it a fight on pages 1274, 1301, 1302, 1319, and quote, I know it was a fight, page 1319 of the reported proceedings. So definitely his testimony indicates something mutual. Blow by blow, he does not remember. It was very early in the fight. He was struck in the head with a candlestick. It was- Counsel, if he had specifically stated he did not choke or stab any of the victims, assume that to be true for the purposes of my question, would he be able to request a self-defense instruction under these circumstances, given the charges? If he did not fight back, he's being charged with fighting back. So I believe he would have to testify, or there would have to be some evidence in the record, very slight evidence that he did use force. That's in the nature of an affirmative defense is to say, force was used, the defense would have to acknowledge that to make this argument. But the evidence wouldn't necessarily have to come from him. I think the Supreme Court's made that clear. And I believe people versus Jones- If he specifically denied having choked or stabbed the individuals, if that was his testimony, you say that he could still request a self-defense instruction if the charge was that he had choked and stabbed the victims? No, not necessarily. I believe you would have to at least to make the argument that there was some use of force. No, I'm not saying some use of force. I'm being very specific about the force that I'm talking about. And that is choking and stabbing. I don't believe so. I mean, I don't know that there's a case that says that. It wouldn't necessarily make sense. I believe that would probably go to whether it was a proportionate response, which again, would be a question for the jury. And the jury should be instructed on that and they would judge for themselves whether that use of force alleged by the state is sufficient. Okay. In terms of being able to request self-defense, there has to be evidence that the defendant actually and subjectively believed danger existed, which required the use of force. Is that right? That's right. And was that evidence present here? Yes. As I pointed out, a number of the individuals who were essentially faced against my client in this case were harmed. And obviously he was outnumbered. It was the issue he's a man and two of the people involved are women, but one of them had a heavy candlestick holder, heavy enough to injure him. He testified that she also had a knife. Murray's son testified that he had a baseball bat and he handed it to his mother. So at some point she had a baseball bat too. So certainly an unarmed man, beating profusely by the head, surrounded by armed individuals would have a right to defend himself. And regardless of our interpretation, my interpretation or anyone's interpretation of the facts of this case, there was some evidence under the actual standard for whether the instruction should be given in the case that the jury is the group of people who should be making that decision. And by refusing to issue the instruction, the trial court usurped the role of the jury, taking that out of their hands and depriving my client of his Sixth Amendment right to have his case decided by a jury and to present the defense that the evidence suggested. It's not an issue of what the trial court thought that the defendant took it out of play with his testimony along the lines of what Justice Harris was questioning about. He's not charged with fighting. He's not charged with punching. He's charged with two things that he denies he did. How does he invoke the right to self-defense if he did those things? Your Honor mentions the reference to my client's testimony. The trial court clearly did not remember my client's testimony correctly. And the example that I'll include is during his closing argument, he pointed out, as I did just now, that one of the sons had a baseball bat and Kenesha had a knife. The state objected to this argument. We don't have to worry about remembering it because we've got the transcript. So tell me, if he disclaims doing the things that he is charged with doing, how does he claim self-defense? How does he get that instruction? Well, the standard for self-defense is that there's a use of force, not necessarily a specific use of force, as charged by the state. I don't believe the state could charge the offense in a way that basically circles around his right to defend himself. But it's defined in relevance to the charge that is against him. The statute said, a person is justified in the use of force against another when, and to the extent that he reasonably believes that such conduct is necessary to defend himself against an imminent use of unlawful force. It says nothing about how it's charged by the state. Also, I would disagree with Your Honor that it doesn't matter what the trial court remembered, given the standard of review being abuse of discretion. If the court misremembered the instruction based on misremembered testimony, that's an abuse of discretion. We do have the transcripts, but this court's review is not de novo. It is actually relevant what the trial judge remembered or understood the evidence to be. And it's not simply enough to say, I remember portions of your testimony where you don't remember what happened. Therefore, you're not entitled to the instruction. We have to look at, again, we do have the transcripts, we have to look at all of the evidence as a whole. And in light of that, the question becomes, whose decision is it whether he acted in self-defense? And obviously, my argument is that it's the decision of the jury. So if the defendant sits on the stands and says, I did not do the things that I am charged with doing, but there's other evidence that says he did, he can ask for that instruction? More so than that. He did admit that he used force. If he denied he used any force at all, that's outside of the scope of the affirmative defense. This is what I'm saying though. He's got to be admitting the things he's charged with or denying the things he's charged with. Only to the extent he's being charged with a use of force, not a specific. For example, if he was charged with stabbing someone and he said, I didn't stab them, I shot them, but I shot them in self-defense, he's still entitled to a self-defense instruction. Again, because the statute pertains to use of force. It doesn't say anything about how the prosecution chose to charge the case. I mean, I could envision a case. I don't mean to imply that a prosecutor is gaming the system, but it's possible if the defendant gave a statement admitting to a certain kind of use of force, the prosecution could just charge another kind of use of force. And if he gets up on the stand and testifies truthfully, then arguably he's not entitled to a self-defense instruction because he didn't admit to the type of force that was charged in the instrument. That really doesn't make any sense to me. I'm sorry. He's entitled to self-defend himself, first of all, against any use of force. The question is whether it's reasonable and proportionate regardless of the specific force used. And that's a question for the jury, not for the judge. And again, just to sum up my four arguments overall, this concerns about whether there's a new trial or what the jury instructions would be only comes into play if this court doesn't rule in my favorite respect to the first argument. If this court finds a speedy trial violation, because the delay in this case was not caused by the defendant or even caused by COVID. Given that Sangamon County had recommenced criminal jury trials, it should reverse this prediction. On that point, Mr. Drummond, you understand that the effect of COVID on the progress of jury trials is not binary. It's not either they're going or they're not. And the record here discusses how there was only one courtroom. So there's one pinch point for all those cases to funnel through. That's part of the COVID delay too, isn't it? It is. And if that's what the trial court had said was the reason for the delay, that would have made sense. But in many instances, the court granted a continuous of the trial date when neither side had requested. It was unknowable why the court had continued the date. It was not based on COVID protocols. However, Sangamon County had recommenced criminal jury trials in July of 2020. And the court, in fact, set this case for trial on a number of dates. Are you understanding what I'm asking you? That just commencing jury trials in the county is not the same as commencing jury trials with only one courtroom. There's just fewer cases that can be tried. Yes, I agree. We'll point out, however, the trial in this case commenced in September 2021. Sangamon County recommenced jury trials in July of 2020. But the Supreme Court's order covers the delay regardless. I would argue that it doesn't. The Supreme Court order allows the chief judge of each individual circuit to decide whether to continue cases based on their own operational needs. As your honor points out, number of courtrooms, jury pools available, any other COVID protections vary. Again, as all of us know by now on a county by county basis, it is possible for each chief judge to make that determination. Specifically, we can't say Sangamon County and Cook County have the exact same jurisdiction. The Supreme Court's orders also extend to facilities limitations as a result of the requirements of COVID, correct? Yes, they do exist, but they're best evaluated by the chief judge of the circuit, not through speculation at this very late stage. Also, we do have the record. The record says it was one courtroom doing trials. The record also says that trial dates were available in this case was set for trial numerous times, only to be continued by the court without even the state requesting it, certainly with the defendant objecting to it. So again, hypothetically, it's very obvious to see why this would be a problem. The point is that the initial 40 days after his arrest, both sides agree are attributable to the state. The only question is, are there another 80 days between February 2020 and September 2021, where the delay was not attributable to the defendant to the Illinois Supreme Court's COVID order, again, which is discretionary to the circuit court judge. And if this court finds 80 days at any point, any of that period, this discussion of a new trial is irrelevant. It needs to reverse his convictions outright because his right to a speedy trial was violated. And again, for the three other arguments in my brief, I do request alternatively a new trial. Again, I think very clearly there were no rule 401 admonishments in 15 months. You're out of time. You'll have rebuttal. Mr. Williams, you may proceed with your argument. Thank you. Again, Mr. Williams, Justice Turner, because I and I'm sorry that I'm doing this out of order, but could I ask for indulgence just to ask Mr. Oman one follow up question to the speedy trial issue here, because I think I'd like to have Mr. Williams be able to Sure. Please go ahead. I just appreciate that. Mr. Oman trial in this case, as you acknowledge, took place in September of 2021. The Supreme Court's tolling order was effective through October one of 2021. Right. That's correct. Is there and a defendant even argue a violation of Torrey speedy trial? If the trial occurred prior to October, October one of 2021, such as occurred in this case, I'll try to answer very briefly. And we can get into a more rebuttal if necessary. I don't want to step on Council's time too much. But the answer is yes, because the Supreme Court order is discretionary for the chief judge of each circuit. And in fact, this court has found very recently, albeit published the shade of people versus bright, that there was a violation for the exact same reason. Well, that this is the formulation, the correct formulation is that the circuit court judge discretionarily determines when the speedy trial clock begins running. That's not cited in my briefs. It's persuasive authority. It's unpublished. Okay, thank you. Thank you. Justice Harris, anything further? No, thank you. Okay. Then, again, you will have rebuttal, Mr. Oman. Now, Mr. Williams, you may proceed. Thank you. May it please court counsel, my name is James Ryan Williams, and it is my privilege to represent the state before this honorable court. Again, first of all, I'd like to thank the court and of course, counsel for accommodating my family situation and apologize for any inconvenience that that may have occasion. With respect to the speedy trial issue, I guess we ended up getting into it a little bit early when counsel first introduced this case. There's one issue in particular here that I would like to focus on just real briefly, and that's what seems to be essentially an endless trend of the defense bar seeking either a change in the law or seeking to benefit from a pending change in the law pursuant to the plain error doctrine. And case after case, and this is a fine example of it, you know, the defense bar will essentially acknowledge the law is not in our favor, but an issue is pending in the Supreme Court that if, you know, in this case, if the Supreme Court concludes it doesn't have the authority to, it didn't have the authority to toll the speedy trial clock, you know, in response to the COVID crisis. But in case after case, the defense bar is seeking either a change in the law or to benefit from a change in the law as a matter of plain error. And the well-established precedent says that the first step in the plain error analysis is to determine whether clear and obvious error has occurred. Clear and obvious error is error that was based on well-established precedent at the time of trial. So even if, you know, the Supreme Court were to come down and say, oh, we didn't have the authority to toll speedy trial clock after all, which of course seems exceedingly unlikely, it's my position that the, it's the state's position, I should say, excuse me, that the defendant still couldn't benefit from that because that was not well-established law at the time of trial. And I don't mean to harp on this point, but in case after case after case, we deal with defendants attempting to change the law as a matter of plain error, which is just fundamentally inconsistent with the plain error doctrine and established case law in point. So the state would just respectfully ask that this court clarify that an error predicated on a change in law is clearly not a plain error. Now, with respect to the waiver of counsel issue. Counsel, let me stop you there. I'm sorry. You said it's not plain error. You mean it's not obvious error? Is that what you're saying? Well, the first step in the plain error analysis is to show that there was a clear and obvious error that occurred. Right. And what we often see is instances where the defense bar is seeking to change the law. And then if that law, if the court bites and that law is in fact changed, then saying that plain error somehow occurred two years in the past before this law was even changed. It just makes no sense. And I don't, again, I don't mean to harp on the point, but we see this, I don't know, I'm approximating, but perhaps in as many as 50% of people, they think the language that counsel used was we're preserving this issue pending the Supreme Court's decision in Mayfield. The issue is not preserved. That makes no sense at all, because even if Mayfield is as unlikely as it is, if that's, if the Supreme Court comes favorably to the defense counsel or to the defense bar, excuse me, that doesn't change what the law was at the time of trial. And after all, that's the first step in the plain error analysis, clear and obvious error at the time of trial. So again, and I'm sorry to, you know, waste time on this point. I've argued this in countless briefs, and I just, I think that it needs to be clarified that you can't seek a change in the law or to benefit from a pending change in the law, you know, in the Supreme Court pursuant to the plain error doctrine. Just makes no sense at all to me. Unless, of course, I'm misunderstanding something, which very well may be the case. But from my reading of it, this just doesn't begin to make sense. Anyhow... Mr. Williams, still, again, without progressing beyond speedy trial here, you heard the question I asked of Mr. Allman at the conclusion of his argument. The COVID tolling order didn't become effective until October 1 of 2021. Or I should say the order that terminated the tolling of speedy trial rights, that then the final date was October 1 of 2021. Trial in this case was in September of 2021. Can there be a statutory speedy trial violation given the order that was in place? No. And I think that I addressed a case like this in my briefing, but I'm going off of my recollection now. But I'm fairly certain that with respect to at least the statutory speedy trial issue that it's established that the Supreme Court has the authority to toll the statutory speedy trial issue. Because I believe this issue came up in a case, and I'm sorry I can't recall it. I'm terrible with case names. But I think it came up in a case as a matter of separation of powers issue, if I recall correctly. And I think in that case, maybe it wasn't even specifically speedy trial, but I believe that it was. But I think it was pretty well clarified in that case that the Supreme Court can do this, at least respect to the statutory speedy trial issue. Maybe as the constitutional speedy trial issue, there's perhaps there's a different argument to be made there. But in this case, I mean, I don't want to get into it because it's going to take all my time. But I mean, the procedural defaults involved in this case, waiver forfeiture and, you know, forfeiture on appeal, it's this issue is procedurally defaulted abound. So, I mean, I'm happy to get into it if the court would like. But the short answer is, no, I don't think that the defendant can complain of a speedy trial violation where the Supreme Court has issued an order in response to a once-in-a-lifetime, you know, pandemic. Okay. Thanks. Now, with respect to the waiver of counsel issue, I understand where defendant is coming from. And just to be completely frank with this court, because actually Martin was my case I handled personally, and I was a little bit surprised by that decision, frankly, because my review of the Supreme Court precedent on case on point, two cases that I would point to are Haines and Baez, you know, the failure to issue a contemporaneous waiver is not always fatal. And I get it in the example that counsel gave earlier. He gave a fine example of giving the admonishment today, saying, let's reconvene in three days. And of course, we're dealing with substantially more time here. But the ultimate question, as the Supreme Court has made clear, is whether the waiver itself is ultimately knowing and intelligently made. And on this point, as far as I could tell, defense doesn't even argue that the waiver was not knowing and intelligent, but rather he essentially argues that the lack of a contemporaneous objection is per se reversible, which our Supreme Court has rejected in Haines. And here the defendant was twice fully admonished, both at times when he was seeking to proceed pro se, and prior to accepting the ultimate waiver here, the court very thoroughly, I think it was something like eight or ten pages, went through ad nauseam, admittedly not giving the rule 401A admonishments, but ad nauseam discussing the various disadvantages of representing yourself in a criminal proceeding. And in Baez, our Supreme Court explained that the defendant's background, experience, and conduct is also relevant to the ultimate question of whether there was a knowing and intelligent waiver. And here we have a 50, or excuse me, a 42-year-old defendant who, from my cold reading of the record, he seemed to be particularly intelligent, a very because of his 12 prior convictions. And I would just submit that it's unreasonable to suggest that the waiver here is anything but knowing and intelligent. And again, that's the ultimate question. It's not whether there was a contemporaneous admonishment, but whether his waiver was knowingly and intelligently made. Mr. Williams, you referenced Martin and defendant in brief at page 38, cites to Martin, and in the parenthetical quotes, Martin, where it says, however, we are required to mechanically apply rule 401 here. And that kind of caught my eye when I read Martin, but Martin subsequently, or later in the opinion, acknowledges only substantial compliance is required. So I'm not quite sure, what does that mean, however, we are required to mechanically apply rule 401 here? I don't think I'm speaking out of turn to say this, but to be honest with you, whenever I got that decision back, that was essentially the number one thing I focused on was the, you know, incongruity, if you will, between saying that they have to mechanically apply something that only requires substantial compliance. Because, I mean, I don't know, but the words mechanically apply seem to suggest strict compliance, not substantial compliance. So, you know, obviously, I won't get into any discussions about, you know, filing a PLA in that particular case. But I will say I respectfully would submit that it was at least my personal opinion that I thought that that was wrongfully decided, particularly in that case, given the facts of that case. And here we deal with similar, I mean, admittedly, as counsel pointed out, we're not dealing with eight admonishments, which I think was an issue in that case, we're only dealing with two. But again, unless I'm overlooking something here, you know, the Supreme Court has specifically said you don't have to have a contemporaneous admonishment. And they specifically said that the ultimate question is whether there is an intelligent and knowing waiver. And I can't remember who it was, but one of your honors pointed out earlier that, you know, there's really nothing suggested. And I guess that, and I'll point out, we are in a plain, of course, naturally, we're in a plain error argument here. So we have to start, you know, we're discussing prejudice. And I would submit that there's nothing in this record that in any way suggests that the defendant would have proceeded differently if only the trial court would have given him a third contemporaneous admonishment with his waiver. And there's nothing to suggest that that somehow undermined the fairness of the trial or, you know, the integrity of the judiciary. Again, I don't think that this trial, this defendant was insistent on proceeding pro se. He was a very intelligent and savvy person. And nothing in this record suggests that this waiver was anything but knowing and voluntary. After all, I mean, he was appointed counsel, fired counsel, hired private counsel, was offered, you know, public defender once again, goes pro se. Nothing suggests that this was not a knowing and intelligent waiver of his right to counsel. He knew he had the right to counsel. And unless there are any issues or any questions on that, I would just briefly move on to the self-defense instruction issue. Respectfully, this was a rather bizarre argument. Honestly, you know, the defendant complains that he wasn't given this self-defense instruction, but it's well established that in order to claim self-defense, you have to acknowledge the alleged acts. After all, the entire point of self-defense is justifying one's use of force. So if somebody repeatedly denies using force, it makes no sense that they can nevertheless argue that the use of force that they didn't commit was nevertheless justified. Mr. Alden says that it doesn't matter the type of force, it's just he could just, the defendant could just simply say that he was justified in the use of force. Deny having stabbed or choked the victims or, you know, that that wouldn't be incongruous in terms of having a self-defense instruction. Why is he wrong? First of all, no, that's an interesting argument. I don't specifically remember that in the briefing, but I will say to that end, the defendant not only denied choking, stabbing, and cutting the victim, but moreover, he repeatedly denied even touching the victim. He said he didn't choke Ms. Davis, but was instead the victim, that he didn't cause the puncture wound, throat mark, bloody chin to Ms. Murray, but was instead the victim. And then when confronted with what was essentially an admission to the police that he did touch the victim, he repeatedly doubled down and insisted that he never touched anyone. So the idea that you could sit here and claim that you never touched anyone and then nevertheless complain on appeal that you didn't get a self-defense instruction, it doesn't make very much sense to me, to put it politely. The opposing counsel argued that he received injuries. Does that make any difference? Well, I mean, that would be some evidence that he was injured, that he was subject to an injury. Now to that end, I'll note there was a case that was cited where basically what the court found was that the defendant can't essentially combine his theory of the case that this didn't happen with the state's evidence that something did happen such as this. I mean, he had an injury to his head, for example, that was bleeding. And I don't remember the case name, but in the briefing, I cited a case that basically said that you can't combine theories. Because again, I mean, like I argued to conclude my brief respectfully, I think it would be pretty confusing to a jury to receive a self-defense instruction when they've just heard Mr. defendant say I didn't do this, I didn't do this, I didn't do this. But if you believe I did it, then fine that I did it in self-defense. I mean, it just – I think that that would be confusing and cause even further problems. And I understand what – the point that they're making that it's some charge that the conduct that was alleged, maybe the conduct he committed was different conduct than that that was alleged. But again, he all – frankly, his testimony was all over the place, and he testified that he never touched anybody. So I guess the jury's to cherry pick, oh, we believe this, we don't believe that. That just seems exceedingly unlikely. Can I ask you a question regarding your brief? Page 21, you cite to a first district case, People v. Lewis, and I'll just read to you what you wrote. You said, as such, defendant never presented any evidence that he reasonably believed the use of force was necessary to prevent imminent death or great bodily harm to himself, and therefore the trial court properly refused the self-defense instruction. My question to you is, does case law say that the use of force in order to get a self-defense instruction must be necessary to prevent imminent death or great bodily harm? I honestly don't know off the top of my head. I'm sorry, Your Honor. I could, of course, submit some supplemental briefing on point. Well, you had previously, in introducing your argument on self-defense, set forth the various elements for obtaining a self-defense instruction, one of the elements being the danger of harm being imminent. But it doesn't state that it must be imminent death or great bodily harm. So what I'm asking specifically is the degree of harm that's posed. Oh, I see what you're saying, Your Honor. Honestly, that just may – I mean, that apparent incongruity where on one hand I'm speaking more generally and then on another hand speaking more specifically to a greater degree of harm, I – at least to my recollection at this moment, I feel like that may have just been an oversight in my briefing, but I can't specifically address that. Okay. But, again, I just – ultimately, the state just admits that – I mean, it would have been – I get it. There was evidence that the defendant said that one of the victims was fighting him. So that's evidence that there was a fight going on. But it's also inconsistent with his own testimony that he never touched them, that – so it's – I mean, ultimately, I just think it would have been – I mean, it would have been very confusing and, frankly, make no sense at all that in a case where the defendant repeatedly denies doing anything wrong and he was just the victim here, nevertheless, can argue that, well, if you believe I did something wrong, then fine that it was justified as a matter of self-defense. I mean, frankly, that seems like having your cake and eating it too. Unless this Court has any further questions. Thank you for your time, Your Honor. Thank you, counsel. Mr. Oman, do you have any rebuttal? You're on mute, sir. You're on mute, sir. Thank you, Your Honor. After all this time, the vagaries of Zoom still escape me sometimes. Very briefly, I have, I believe, about four very quick responses to what just came up. Working backwards, in response to Justice Harris's question about the degree of harm required, obviously, imminent belief that there's a need for deadly force requires a heightened standard with the degree of harm being deadly force to the defender or to another. That's really not an issue in this case because there's not really deadly force alleged or involved on either side. This isn't an attempted murder case or a murder case. However, there certainly is plenty of evidence of force and weapons being involved. Counsel at length talked about how my client's testimony was kind of all over the place, which is basically a result of his lack of recollection, having been choked unconscious and smashed in the head with a candlestick at the outset of the encounter. So he's very clear about details. But I believe towards the end of the argument, counsel, frankly, got around to admitting that there was a mutual fight. And again, it's consistent with this testimony that I quoted earlier. Well, he didn't say mutual. And I think that you're reading into the word fight that there's mutual. If I stepped in the ring with Mike Tyson, I might like to believe it's a mutual fight, but it probably wouldn't be. The words that he used, I didn't do those acts. I didn't commit those acts. These are his words. I didn't have a knife. I'm innocent. I didn't commit those acts. I didn't do that. I didn't commit the act of choking definitely not stabbing two people. So if he says it that clearly, how does he get to invoke, oh, but when I didn't do it, I did it in self defense. Well, I have a two part answer to that. First of all, if anyone's Mike Tyson in this case, it's certainly not my client, since he's the one who got knocked out. Secondly, he said those things. He also said, not just that there was a fight, but again, I'll quote, quote, it's me and Kenesha locked in, quote, we were tussling towards the couch. Again, on pages 1270 and 1302. I agree the testimonies all over the place, the evidence all over the place. But that means it's a question for the jury. That's what jurors do. They look at all the evidence and they decide whether or not the defendant's guilty having been properly instructed. That's my only my only point on this matter. Yes, there is some evidence each way. But that's all we need is some evidence. The standard is that low, as long as there is some evidence the jury should have been instructed. Moving to argument to again working backwards. Opposing counsel suggested the decision in Martin was somehow surprising or unprecedented. But it's based on this court discourse, not just the Illinois Supreme Court, but this court's precedents, for example, in Langley in 1992 case from this court. This court said, quote, prior admonishments and defendants decision to discharge counsel. Do not somehow cause defendant to forego the right to be fully informed of the ramifications of acting on his own behalf. That's people versus Langley 1992 say my briefs. Didn't the court and Martin put particular emphasis on the fact that he was in a different stage of the proceedings and they needed that admonishment at that stage of the proceedings. Yes, but again, we're talking about the gaps in times here stages of the proceedings are different. In this case, too, when you're talking about But it's more than the time right because I may have been told I had a right to counsel a trial. Maybe I don't know that I've got a right to counsel at sentencing and there's a material difference. Isn't that what Martin is really getting at. Well, that's not the only thing it's getting at that is a difference, but there are different stages in this case as well. The arrest was again. This was a New Year's Eve party. The rest was in January. The admonishments that opposing counsel keeps talking about. We're only two months later, this is extremely, extremely pretrial discovery is not tender. This is definitely for sure different stage of trial that in pretrial posture. We're ready to go to trial. In fact, that was the point of contention. Is that he wanted to accelerate to that point as quickly as possible, because his appointed counsel and later as a retained counsel wouldn't do that. That's the only reason he Represented himself. The notion that the admonishments were ineffective. Which I think opposing counsel touched on is wrong because in March when he received the admonishments he changed his mind and back down and said, No, I think I better stick with public defender. When 15 months later, he was presented with this Pages of admonishments that opposing counsel referred to significantly, none of which over three on the actual rule for one admonishments, which is significant because it's definitely not substantial compliance when you go over three At that point, yeah, you went ahead and defended himself. That's true. But had he been fully informed again as he was back in March, he might not have done so. And then just lastly, I touch on Counsel's beginning speech about the defense bar. I'm not here representing the defense bar. I'm here representing an individual to Sean Johnson. And this court should decide based on the facts of this case and not make any larger comments about the defense bar in general. That's really inappropriate, in my opinion. Counsel's reference to a change in the law. I'm not asking for a change in the law or an application to a change in the law. I'm citing precedents. The Illinois Supreme Court precedents of this court's precedents. I acknowledge that the Illinois Supreme Court might change the law when Mayfield's decided But this is a direct appeal. So any change in the law that occurs in the Supreme Court while this case is pending on direct appeal. Is retroactive and applies to this case. So yes, I'm going to reserve my rights, just like I did with respect to cross I'm going to reserve my right when the decision comes down to file the motion to cite that I filed and explain how it applies to this case and it does apply to this case. Mr. Roman You're out of time. Thank you, your honor. And for the record, I do believe that Buster Douglas did knock out. Thanks for your arguments the case is submitted and the court now stands in recess until further call